**Linda Roma JACKSON, Appellant,**

v.

**Richard Thomas JACKSON, Appellee.**

**No. 12204.**

Court of Civil Appeals of Texas, Austin.

June 4, 1975.

Rehearing Denied June 25, 1975.

Alfred E. Glenn, Austin, for appellant.

J. C. Hinsley, James W. Townsend, Austin, for appellee.

O'QUINN, Justice.

Linda Roma Jackson, appellant, sued Richard Thomas Jackson for divorce, child custody and division of property. After trial before the court, without intervention of a jury, judgment was entered in February of 1974 granting appellant a divorce, appointing managing and possessory conservators for the children, providing child support, and ordering division of the real and personal property.

Appellant brings three points of error under which she contends (1) that she was improperly denied trial by jury, (2) that award of 351.6 acres of land in Caldwell County to appellee as his separate property was not supported by clear and convincing proof, and (3) that it was error to find there was no evidence of probative force that value of the land had been enhanced by contributions from the community estate.

We will overrule the points of error and affirm the judgment of the trial court.

Appellant filed this lawsuit in November of 1972 and sought, among other remedies, injunctive relief to restrain defendant in several respects. During the next nine months she was before the trial court on various motions, but at no time sought to have the case set for trial on the merits, nor did she make a demand for a jury or pay a jury fee.

On motion of appellee, defendant below, the trial court, on August 9, 1973, set the cause for trial on the non-jury docket for September 6, 1973. Two weeks after the case was set for trial, on August 24, 1973, appellant demanded a jury and paid the jury fee, and the case was placed on the jury docket. Appellee moved to strike the case from the jury docket, and after a hearing the trial court on August 31, 1973, entered an order striking the case from the jury docket.

The court's order recites that the court heard evidence and argument of counsel, after which the court found that "the facts

and allegations contained in said motion to strike are true and correct, and among other things, that there would be no jury available on September 6, 1973, nor during the week of September 3, 1973, nor would a jury be available to hear such case until the first week in December, 1973, thus causing an excessive delay in the trial of said cause and that the demand for a jury and the payment of a jury fee was for the purpose of delaying trial of this cause."

The transcript does not include appellee's motion to strike, and evidence adduced at the hearing on the motion has not been brought forward in the statement of facts by appellant.

Appellant relies for reversal upon these provisions of Rule 216, Texas Rules of Civil Procedure:

"No jury trial shall be had in any civil suit, unless application be made therefor and unless a fee of five dollars if in the district court, and three dollars if in the county court, be deposited by the applicant with the clerk to the use of the county on or before appearance day or, if thereafter, a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than ten days in advance."

Appellant did not demand a jury and pay the fee "on or before appearance day," but did take this action "not less than ten days in advance" of the date set for trial. In Texas Oil and Gas Corporation v. Vela, 429 S.W.2d 866, 877 (Tex.Sup.1968) the Supreme Court agreed with the holding of the court of civil appeals (405 S.W.2d 68, Tex. Civ.App.) "that a demand made ten days in advance is not necessarily timely as a matter of law," and that in view of circumstances mentioned by the trial court in that case denial of a jury trial was not error. The trial court had mentioned that a jury was not available, trial would be delayed, and the court's heavy docket in a district composed of four counties. Even though demand was made ten days in advance of

the date of trial, the court of civil appeals held that "these facts support the trial court's conclusion that the demand was not made a reasonable time in advance of the setting." (405 S.W.2d 80)

This Court followed *Vela* in Sylvester v. Griffin, 507 S.W.2d 649, 651 (Tex.Civ.App. Austin 1974, no writ).

In addition to the findings contained in the order, the trial court filed findings of fact and conclusions of law in which the court found that the case had been on file nine months during which time appellant, though before the court on various motions, failed to demand a jury and pay the fee. The court concluded that "demand for a jury was not made within a reasonable time before the date set for trial . . . [and] To have permitted the cause to remain on the jury docket would have unreasonable [sic] delayed the trial . . . [therefore] This cause was properly removed from the jury docket and trial by jury was properly denied." As already observed, the trial court in its order found that demand for a jury was "for the purpose of delaying trial" of the case.

■ We find nothing in the record, and appellant has not brought forward either evidence or findings of fact, to refute, or to demonstrate a conflict with, the findings of the trial court upon which the cause was stricken from the jury docket and trial by jury was denied. Appellant has not met the burden to show that the order of the trial court was contrary to law or. that the court's action was an abuse of discretion. We hold that the trial court did not err but acted within its discretion in striking the cause from the jury docket.

Under the final two points of error appellant contends that the trial court incorrectly found that 351.6 acres of land in Caldwell County is "altogether the separate property of the Appellee," and that the court erred in finding there was no evidence of probative force that the value of the land "had

been enhanced by any contributions by the community estate."

Appellee contended in the trial and contends on appeal that the 351.6 acres of land is his separate property, received by him in the course of settlement of his deceased father's estate.

The trial court made and filed findings of fact and conclusions of law in addition to the findings and conclusions contained in the judgment. The court found that "Title and ownership of the . . . [351.6 acres of land] is in Respondent by inheritance from his father and mother and such property is the separate property of Respondent [appellee]." The trial court awarded the land to appellee and "adjudged and decreed . . . that said 351.6 acres is the sole and separate property of Respondent . . ."

■ When a marriage is dissolved all property possessed by a husband and wife is presumed to be their community property, although this presumption is rebuttable, and the burden is upon the spouse asserting otherwise to prove the contrary by satisfactory evidence. Tarver v. Tarver, 394 S.W.2d 780, 783 (Tex.Sup.1965). The presumption was created by Article 4619, sec. 1, Vernon's Ann.Civ.St. (Acts 1959, 56th Leg., p. 881, ch. 404, sec. 1), which was repealed effective January 1, 1970 (Acts 1969, 61st Leg., p. 2707, ch. 888, sec. 6), but the presumption was carried over and remains by clear language of Section 5.02 of the Texas Family Code, V.T.C.A. McKinley v. McKinley, 496 S.W.2d 540, 543 (Tex.Sup. 1973).

■ To discharge the burden, the spouse asserting property to be separate, and therefore not a part of the community estate, must trace and clearly identify the property claimed as separate property. McKinley v. McKinley, supra; Tarver v. Tarver, supra; Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226, 227 (1947); Chapman v. Allen, 15 Tex. 278, 283 (1855); Epperson

v. Jones, 65 Tex. 425, 427 (1886). It appears from the cases decided under the statutes that difficulty in tracing and identifying property claimed to be separate most frequently arises with respect to personalty which has been so commingled with community property as to defy resegregation and identification, in which instances the burden is not discharged and the statutory presumption that the entire mass is community controls its disposition. Tarver, supra ; Bryant v. Bryant, 478 S.W.2d 602, 605 (Tex. Civ.App. Waco 1972, no writ).

■ From a careful examination of the record we conclude that appellee discharged his burden to prove that the 351.6 acres of land was his separate property, acquired as a result of a series of events and transactions related to the wills of his mother and father and to transfers pursued by appellee, his brother, and his step-mother in final settlement of his father's estate, of which the disputed tract of land was a part.

Six documents were introduced into evidence at the trial to establish history of title to the 351.6 acres of land. Under the will of appellee's mother, who predeceased appellee's father, she provided if her husband should enter into a second marriage, the mother's part of the community property should be set aside for the two sons, appellee and his brother. The record shows that appellee's father did remarry about three years after his first wife's death.

The will of appellee's father was also placed in evidence. Under his will the bulk of his estate, both separate and community, went to his second wife and to the two sons of the first marriage, share and share alike. The home in Lockhart went to the wife. The father's will acknowledged the fact that under his first wife's will one-half of the community of the first marriage was devised to the two sons, and the father's will indicates that distribution made by him constituted an attempt to make equitable division of his separate and community in-

terests among his second wife and the two sons.

The remaining four documents introduced pertained directly to title to the 351.6 acres of land. In January of 1960 appellee's brother conveyed a one-third interest in the land to appellee. In April of 1960 the father's widow, his second wife, conveyed her interest in the 351.6 acres of land to appellee and his brother. That deed recites full valuable cash consideration and negatives any lien being retained. The record shows that on the same date this conveyance was made the widow was issued a cashier's check in the sum of $17,000 which had been purchased by the father's estate.

In May of 1961 appellee conveyed the 351.6 acres of land to his brother. The deed did not specify the consideration, nor was a lien retained. Seven weeks later, in July of 1961, appellee's brother reconveyed the same tract of land to appellee, again without specification of the consideration and without retention of a lien. There is some evidence in the record that at the time of the father's death, late in 1957, there was a lien against the 351.6 acres of land to secure a loan from the Federal Land Bank. Appellee testified that his brother and the estate had been making payments on the note, and appellee understood the conveyance in May of 1961 was to enable his brother, who appears to have managed the business of the father's estate, to handle a loan. But when the property was conveyed to appellee a few weeks later in the final settlement of the estate, there was no lien retained and none assumed by appellee. We find no evidence in the record that the community estate of appellant and appellee at any time agreed to make payments on any debt against the 351.6 acres of land, and there is no showing what amount of money, if any, was paid from community funds of appellant and appellee on principal or interest related to a debt against the land appellee received in final settlement of the father's estate.

It is undisputed that the father's widow, who was devised the home in Lockhart, decided in 1960 that she did not want to remain in Lockhart and desired to move to Kerrville. She also decided that she did not want any of the land constituting part of the residuary estate, which included two farms, one being the 351.6 acres of land in controversy, and several lots at Seguin. The transactions in 1960 and 1961, by which the 351.6 acres of land was transferred among the two sons and the widow, were part of an effort to divide the estate in an equitable manner, involving in the main town property and two farms. Ultimately, the widow received cash from the estate, and the two sons divided the several tracts of land between them, with appellee receiving the 351.6 acres of land.

■ The trial court found the community estate of appellant and appellee to have a net value of $37,045.00, of which the court awarded property having a net value of $665.00 to appellee. Appellant insists that a total of $6,330.00 was paid from community funds on a debt against the 351.6 acres of land and that the trial court erred in finding that contributions from the community had not enhanced the value of appellee's separate property interest in the tract. Appellant failed to prove any increase in value of the 351.6 acres of land, even if community funds were used to discharge part of an indebtedness against the farm. Such payments, if made, did not automatically result in enhancement. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, 802 (1925).

■ A trial court is invested with wide discretion in disposing of both community and separate property in a divorce proceeding, and the court's action in exercise of its discretion should not be disturbed on appeal, unless there is a showing of abuse of discretion because disposition made of property is manifestly unjust and unfair. Bryant v. Bryant, supra; Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21 (1923). We have concluded that the trial court divided the

community property in a manner deemed by the court to be just and right. Maddox v. Maddox, 489 S.W.2d 391 (Tex.Civ.App. Houston 1st 1973, no writ).

The judgment of the trial court is affirmed.